**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| KARIN E. WOLF, DANIEL CRANE, and GRETCHEN CRANE,<br><br>   Plaintiffs,<br><br>v.<br><br>STATE OF NEW JERSEY, COUNTY OF BERGEN, ADMINISTRATIVE OFFICE OF THE COURTS, HON. GLENN A. GRANT, J.A.D., DAVID TANG, LAURA SIMOLDONI, ARTHUR ANDREANO, DEPARTMENT OF CHILDREN AND FAMILIES (DCF), DIVISION OF CHILD PROTECTION AND PERMANENCY (DCPP), KARI FERRARE, LYDIA TATEKAWA, DR. ALLWYN J. LEVINE, VALERIE SOLIMANO, ESQ., JAY ATKINS, ESQ., LUCIANA COUTINHO-CRANE, and PETER J. MELCHIONNE,<br><br>   Defendants. | No. 19cv16979 (EP) (JRA)<br><br>**OPINION** |

**PADIN, District Judge.**

   Presently before the Court are motions to dismiss Plaintiffs' amended complaint filed by: (1) Defendants Administrative Office of the Courts, Hon. Glenn A. Grant, J.A.D., Peter J. Melchionne, David Tang, Laura Simoldoni, Arthur Andreano, and Valerie Solimano, Esq., D.E. 70; and (2) Defendant Luciana Coutinho-Crane, D.E. 72. The Court has reviewed the parties' submissions and decides the motions without oral argument. *See* Fed. R. Civ. P. 78(b); L.Civ.R. 78.1(b). For the reasons stated below, both motions are **GRANTED**.

## I.      BACKGROUND

Plaintiff Karin E. Wolf is the biological mother of Plaintiffs Daniel Crane and Gretchen Crane.  D.E. 32 ¶ 4.  Plaintiffs,[1] by way of the present lawsuit, challenge the actions and decisions of multiple actors involved in three separate legal actions involving Wolf that are/were pending in the Superior Court of New Jersey's Bergen Vicinage:[2] (1) *Luciana Coutinho-Crane v. Karin Wolf and Edward Crane*, Bergen Court Case No. FD-02-37-18; (2) *New Jersey Division of Child Protection and Permanency v. Karin Wolf, Luciana Coutinho-Crane, and Edward Crane (deceased)*, Bergen Court Case No. FN-02-68-19; and (3) *State of New Jersey v. Karin Wolf*, Bergen Court Case/Complaint No. W-2018-000077-0222.  D.E. 32 ¶¶ 70-72.  Wolf alleges that since at least April 2018, "Defendants have refused to provide [her] with individualized treatment; and disability accommodations and modifications necessary to ensure full and equal access [to] court proceedings [in] which [Wolf's] parental rights and [her] children's custody/guardianship were at issue."  D.E. 32 ¶ 23.

Wolf, on behalf of herself and her two children, initiated the present action, *pro se*, on July 11, 2019, when both children were still minors.[3]  D.E. 1.  Plaintiffs subsequently retained counsel, Kenneth Rosselini, Esq., to represent them in this matter.  D.E. 6.  Rosselini entered his notice of appearance on March 6, 2020.  *Id.*  On December 27, 2021, Rosselini filed the amended complaint that is the subject of the Court's present dismissal decision.  D.E. 32.  Plaintiffs' counseled pleading

---

[1] Although there are three named Plaintiffs, it is clear, based on a full and fair reading of the amended complaint, that substantially all of the claims and grievances detailed therein pertain exclusively to Wolf.  The Court accordingly uses the terms Wolf and Plaintiffs interchangeably.

[2] Wolf has unsuccessfully attempted to assert similar claims against various actors associated with the Bergen County Superior Court's Family Division in two prior, now-closed lawsuits in this District, *Wolf v. Escala*, Docket No. 15cv5985, and *Wolf v. State of New Jersey*, Docket No. 17-2072.

[3] It appears that both Daniel and Gretchen are now adults.

is 73 pages long and contains 444 separate paragraphs.  It identifies 16 separate Defendants, many of whom have since been dismissed.  The already-dismissed Defendants are State of New Jersey, Department of Children and Families (DCF), Division of Child Protection and Permanency (DCPP), Kari Ferrare, Lydia Tatekawa, Dr. Allwyn J. Levine, Jay Atkins, Esq., *see* Mar. 29, 2022 Order D.E. 45, and County of Bergen, *see* Mar. 22, 2022 Order, D.E. 42.

The remaining Defendants are: (1) Administrative Office of the Courts ("AOC"); (2) Hon. Glenn A. Grant, J.A.D.; (3) Peter J. Melchionne; (4) David Tang; (5) Laura Simoldoni; (6) Arthur Andreano; (7) Valerie Solimano, Esq.; and (8) Luciana Coutinho-Crane.  AOC "is the administrative office of the Courts of the State of New Jersey."  D.E. 32 ¶ 9.  Judge Grant "is the Acting Administrative Director of the Court of the State of New Jersey."  *Id.* ¶ 12.  Judge Melchionne is the "Presiding Judge of the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County Vicinage."  *Id.* ¶ 13.  Tang "is the Chief of the Family Practice Division within the Administrative Director of the Courts of the State of New Jersey."  *Id.* ¶ 14.  Simoldoni "is the Trial Court Administrator of the Superior Court of New Jersey, Bergen County Vicinage."  *Id.* ¶ 15.  Andreano "is the Operations Manager of the Superior Court of New Jersey, Bergen County Vicinage."  *Id.* ¶ 16.  Solimano is a New Jersey attorney "who was appointed by the Superior Court of the State of New Jersey to act as Guardian Ad Litem [("GAL")] for Daniel Crane and Gretchen Crane."  *Id.* ¶ 20.  Coutinho-Crane is the "stepmother of [Daniel and Gretchen], and instituted, prosecuted and participated in litigations involving Plaintiffs."  *Id.* ¶ 22.

As noted, Plaintiffs' amended complaint challenges the actions, decisions, and behavior of multiple actors involved in three separate state court matters pending in the New Jersey Superior Court's Bergen County Vicinage.  The first two matters, *Luciana Coutinho-Crane v. Karin Wolf and Edward Crane*, Bergen Court Case No. FD-02-37-18 (the "FD Matter"), and *New Jersey*

*Division of Child Protection and Permanency v. Karin Wolf, Luciana Coutinho-Crane, and Edward Crane (deceased)*, Bergen Court Case No. FN-02-68-19 (the "FN Matter") appear to concern Wolf's unsuccessful efforts to regain custody of her two children while they were both still minors.  Both cases appear to have been presided over by Judge Melchionne.  In the third matter, *State of New Jersey v. Karin Wolf*, Bergen Court Case/Complaint No. W-2018-000077-0222 (the "Criminal Matter"), Wolf appears to have been criminally charged for custodial interference based on her actions on August 22, 2018, when Wolf picked up Gretchen in North Carolina, notwithstanding that Gretchen was then in the lawful custody of her stepmother, Coutinho-Crane.  *See id.* ¶¶ 147-154, 338.

The substantive allegations which support Plaintiffs' claims against the remaining Defendants are, in many ways, quite limited and appear to be selectively pled.  Plaintiffs' substantive allegations can be appropriately summarized as follows.  Wolf suffers from "Post-Traumatic Stress Disorder (PTSD) and Chronic Asthma."  *Id.* ¶ 4.  Her daughter, Gretchen, also has PTSD, as well as scoliosis.  *Id.* ¶ 4.  Wolf claims that these afflictions constitute disabilities that have not been appropriately recognized and/or accommodated by Defendants, and that this has deprived Wolf of "full and equal access [to] court proceedings [in] which [Wolf's] parental rights and [her] children's custody/guardianship were at issue."  *Id.* ¶ 23.  Wolf claims that the following "accommodations" which she requested from the state court were improperly denied: (1) an April 12, 2018 change of venue request, *id.* ¶ 83; (2) an April 18, 2018 request to Operations Manager Andreano to change venue, and for audio recordings and transcripts, which Andreano denied based on Wolf's refusal to sign a HIPAA release, *id.* ¶¶ 102-108; (3) a June 20, 2018 request for otherwise unspecified "disability accommodations and modifications," *id.* ¶ 133, which Trial Court Administrator Simoldoni denied based on Wolf's refusal to sign a HIPAA release, *id.* ¶¶

137-138; (4) an October 1, 2018 in-court request to Judge Melchionne for otherwise unspecified "disability accommodations and modifications," which Judge Melchionne refused because Wolf did not sign a HIPAA release, *id.* ¶¶ 170-171; and (5) an October 22, 2018, letter request to Judge Melchionne for appointment of counsel in the FD Matter.[4]  *Id.* ¶ 191.

Wolf further claims that the Superior Court "did not provide disability accommodations and modifications to [her]" during court appearances on November 28, 2018 and December 6, 2018.  *Id.* ¶¶ 199-200, 206-207.  Wolf also claims that the Bergen County Court improperly assigned her cases to Judge Melchionne.  *Id.* ¶ 84.

Plaintiffs' amended complaint alleges that "[o]n April 24, 2018, without proper notice to Karin Wolf, Luciana Coutinho-Crane, filed an emergent application for custody of [Daniel and Gretchen,] claiming Karin Wolf was unfit and mentally ill."  *Id.* ¶ 114.  And that "Judge Melchionne[, in response], arbitrarily and capriciously, while exceeding his jurisdiction, gave sole physical custody, legal custody, and guardianship to [Coutinho-Crane]; and appointed Valerie Solimano as a GAL for the children."  *Id.* ¶ 117.  "Moreover, in blatant violation of the First Amendment, Judge Melchionne issued a politically motivated Gag order against Karin Wolf."  *Id.* ¶ 119.  Wolf alleges that "[Judge] Melchionne continued to hold court proceedings and issue orders, without disability accommodations and modifications for Karin Wolf."  *Id.* ¶ 142.  Wolf claims that during a February 13, 2019 hearing, "Judge Melchionne refused to recuse himself and retaliated by appointing a [GAL] for Wolf."  *Id.* ¶ 229.  She notes that "on or around March 12, 2019, Judge Melchionne issued orders suspending Karin Wolf's parenting time with her daughter, barring her from contact with daughter, and demanding she turn over the child's U.S. passport;

---

[4] Wolf notes that the state court appointed counsel to her for both the FN Matter and the Criminal Matter, and that she ultimately retained an attorney, Lou Lamatina, who represented her in the FD Matter.  D.E. 32 ¶¶ 191, 195.

and signed an order for Karin Wolf's arrest." *Id.* ¶ 253.  Plaintiffs' amended pleading alleges that "[o]n or around April 4, 2019, Judge Melchionne issued a default against Karin Wolf and suppressed her pleadings in the FD [Matter]." *Id.* ¶ 255.  "On or around June 24 and 25, 2019, Judge Melchionne held a trial in the custody matter." *Id.* ¶ 259.  "Judge Melchionne knew Karin Wolf needed accommodations, wouldn't give them," and tried the case without her present. *Id.* ¶ 258.  He also "refused to let Karin Wolf appear telephonically or even listen to the proceedings." *Id.* ¶ 261.

Wolf further alleges that "[o]n June 10 and 17, 2019, Plaintiff Karin Wolf wrote and sent a letter and addendum via fax and certified mail, to Defendants Glenn Grant and David Tang of the AOC, citing disability-based discrimination and retaliation by the Superior Court of New Jersey, Bergen County Vicinage; and called for Judge Melchionne's removal as the judge in her cases; and other relief." *Id.* ¶ 347.  "[Grant and Tang] did not respond." *Id.* ¶ 348.

The claims asserted in Plaintiffs' amended complaint, as they pertain to the remaining Defendants, are as follows:  (1) Count One – Violations of Titles II and III of the Americans With Disabilities Act ("ADA"), against AOC, Grant, Melchionne, Tang, Simoldoni, Andreano, and Coutinho-Crane, D.E. 32, ¶¶ 374-408; (2) Count Two – Violation of Section 504 the Rehabilitation Act ("RA"), 29 U.S.C. § 794, against AOC, *id.* ¶¶ 409-425; (3) Count Three – Declaratory Relief, 28 U.S.C. § 2201, against AOC, Grant, Melchionne, Tang, Simoldoni, Andreano, and Coutinho-Crane, *id.* ¶¶ 426-427; (4) Count Four – Claim for Malicious Abuse of Process, against Coutinho-Crane, *id.* ¶¶ 428-430; (5) Count Five – Civil Conspiracy, against Melchionne, Solimano, and Coutinho-Crane; *id.* ¶¶ 431-437; (6) Count Six – Claim Under 42 U.S.C. § 1983, against Melchionne and Solimano, *id.* ¶¶ 438-439; and (7) Count Seven – Claim Under New Jersey Civil Rights Act, against Melchionne, Solimano, and Coutinho-Crane, *id.* ¶¶ 440-444.

On August 12, 2022, Defendants AOC, Andreano, Grant, Melchionne, Simoldoni, Solimano, and Tang filed their motion to dismiss Plaintiffs' amended complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  D.E. 70.  Plaintiffs filed opposition to that motion on August 25, 2022.  D.E. 71.  Those Defendants replied on September 12, 2022.  D.E. 75.

On August 26, 2022, Defendant Coutinho-Crane separately moved for dismissal under Rule 12(b)(6).  D.E. 72.  Plaintiffs opposed that motion on November 7, 2022.  D.E. 83.  And Coutinho-Crane replied on December 12, 2022.  D.E. 86.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations.  However, the allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013).  That standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted.  As the moving party, the defendant bears the burden of showing that no claim has been stated. *Animal Sci. Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011).  For the purposes of the motion, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

Rule 12(b)(1) provides for the dismissal of a complaint for lack of subject matter jurisdiction.  A Rule 12(b)(1) motion to dismiss may be a challenge either to the face of the complaint or to the sufficiency of the underlying facts contained in the complaint.  *See Mortensen v. First Federal Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  On a facial attack, the allegations in the complaint are entitled to a presumption of truthfulness, just as they are in the context of motion under Rule 12(b)(6).  *Id.*  On a factual challenge, however, the allegations in the complaint are not entitled to such a presumption.  *Polanco v. Omnicell, Inc.*, 988 F.Supp.2d 451, 458 (D.N.J. 2013).  The reviewing court may therefore consider "conflicting written and oral evidence . . . and . . . may decide for itself the factual issues which determine jurisdiction."  *Martinez v. U.S. Post Office*, 875 F. Supp. 1067, 1070 (D.N.J. 1995).  The party seeking to invoke federal jurisdiction bears the burden of establishing its existence.  *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991).

## III.   ANALYSIS

### A.  Judicial Immunity and Quasi-Judicial Immunity

"It is a well-settled principle of law that judges are generally 'immune from a suit for money damages'" for actions taken in the performance of their official duties.  *Figueroa v. Blackburn*, 208 F.3d 435, 440 (3d Cir. 2000) (quoting *Mireles v. Waco*, 502 U.S. 9, 9 (1991)).  Indeed, judicial immunity even extends to judicial acts that are taken "in excess of [the judge's] jurisdiction, and are alleged to have been done maliciously or corruptly."  *Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978).  "A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors."  *Id.* at 359.  Judicial immunity extends to suits brought under 42 U.S.C. § 1983, *see Pierson v. Ray*, 386 U.S. 547, 553-55 (1967), as well as where it is alleged that the judge is acting as part of a conspiracy,

see *Dennis v. Sparks*, 449 U.S. 24, 26-27 (1980) (finding that a judge who entered an injunction as part of an alleged conspiracy to deprive the plaintiff of property was "properly dismissed" from the suit on immunity grounds).  There are only two situations in which judicial immunity will not attach: (1) where the judge's acts were non-judicial in nature—that is, they were "not taken in the judge's judicial capacity;" or (2) where the judge's acts were judicial in nature, but were "taken in the complete absence of all jurisdiction."  *Mireles*, 502 U.S. at 11-12.

With respect to Judge Melchionne, Wolf complains solely about judicial actions taken by Melchionne during state court proceedings.  "Without doubt, these actions fall squarely within the realm of judicial acts for which Judge [Melchionne] is absolutely immune from liability."  *Wolf v. Escala*, Civil Action No. 14-5985, 2015 WL 2403106, at *11 (D.N.J. May 20, 2015).  All claims against Judge Melchionne seeking money damages are accordingly dismissed with prejudice.

The only specific factual allegations in Plaintiffs' amended complaint about Judge Grant are that Wolf wrote him a letter and left a telephone message with his secretary regarding her allegations of discrimination and retaliation in the New Jersey Superior Court, Bergen Vicinage, and that Judge Grant failed to respond.  *See* D.E. 32 at ¶¶347-350.  These claims fail to support a viable claim against Grant under any legal theory.  Moreover, because these allegations pertain only to the actions (or rather inactions) taken by Judge Grant in the performance of his official judicial duties, Grant also enjoys absolute immunity from all claims asserted by Plaintiffs against him seeking money damages.

"Absolute judicial immunity also extends to nonjudicial officers for claims relating to the exercise of judicial functions."  *Savadjian v. Caride*, No. 18-16381, 2019 WL 6975102, at *2 (D.N.J. Dec. 20, 2019) (citing *Butz v. Economou*, 438 U.S. 478, 512-13 (1978)).  "Specifically, 'quasi-judicial' absolute immunity may extend to individuals tasked with performing functions

that are judicial in nature." *Id.* The Court finds that it extends to: (1) David Tang, the Chief of the Family Practice Division within the Administrative Director of the Courts of the State of New Jersey; (2) Laura Simoldoni, the Trial Court Administrator of the Superior Court of New Jersey, Bergen County Vicinage; (3) Arthur Andreano, the Operations Manager of the Superior Court of New Jersey, Bergen County Vicinage; and (4)Valerie Solimano, the New Jersey attorney "who was appointed by the Superior Court of the State of New Jersey to act as GAL for Daniel Crane and Gretchen Crane."

Tang, Simoldoni, and Andreano are all court administrators. Plaintiffs' scant factual allegations against these three Defendants is that each of them, in the course of executing their official job duties as court administrators, improperly denied or otherwise improperly responded to one of Wolf's requests for court "accommodations." First, the limited factual allegations against these Defendants fail to support any legally viable cause of action. Second, even if they did, each of these Defendants enjoys immunity from suit for money damages. *Wolf v. Escala*, Civil Action No. 14-5985, 2015 WL 2403106, at *11 (D.N.J. May 20, 2015) (court administrator enjoys quasi-judicial immunity for actions taken by her in that capacity).

With respect to Solimano, the Court also finds that she enjoys the benefit of quasi-judicial immunity. Plaintiffs' amended complaint makes clear that all of their allegations against Solimano stem from actions undertaken in her role as GAL to Daniel and Gretchen. As the Third Circuit has explained:

> A *guardian ad litem* is a person appointed by the court in custody proceedings to serve as an investigator and gather information about the parents and the children and report back to the court recommending which parent should receive custody. . . . Characterized as "agents" of the court, *Cok* [*v. Cosentino*, 876 F.2d 1, 2-3 (1st Cir.1989)], and "actual functionar[ies] or arm[s] of the court," *guardian ad litems* aid and inform the court. *Gardner v. Parson*, 874 F.2d 131, 146 (3d Cir. 1989) ("[a] *guardian ad litem*

10

would be immune in exercising such functions as . . . making reports and recommendations to the court in which the guardian acts as an actual functionary or arm of the court.").

*Hughes v. Long*, 242 F.3d 121, 126 (3d Cir. 2001).

There is nothing in Plaintiffs' amended complaint which credibly suggests that the actions taken by Solimano were outside of the scope of her role as GAL. That Wolf is dissatisfied with Solimano's actions as a court-appointed GAL does not change this fact. Solimano accordingly enjoys the benefit of quasi-judicial immunity. *See Russell v. Richardson*, 905 F.3d 239, 247 (3d Cir. 2018) (GALs fulfill a quasi-judicial role at the court's request, and therefore enjoy the benefit of quasi-judicial immunity).

## B. Plaintiffs' ADA, RA, and Declaratory Relief Claims

In Count One, Plaintiffs assert that Defendants AOC, Grant, Melchionne, Tang, Simoldoni, Andreano, and Coutinho-Crane violated Titles II and III of the Americans with Disabilities Act. Count One requests injunctive relief against all of these named Defendants and requests compensatory damages from AOC "should the United States Department of Justice join or intervene" in this action. D.E. 32 at p. 62-63. In Count Two, Plaintiffs assert that AOC violated Section 504 of the Rehabilitation Act. And in Count Three, they assert a claim for declaratory relief under 28 U.S.C. § 2201 against AOC, Grant, Melchionne, Tang, Simoldoni, Andreano, and Coutinho-Crane that is limited to "construing and determining the rights of Plaintiffs under the [ADA] and Section 504 of the [RA]." *Id.* ¶ 427.

### i. *Plaintiffs' Title III ADA Claim is Dismissed with Prejudice*

Plaintiffs' claim for relief under Title III of the ADA will be dismissed with prejudice because that portion of the ADA speaks only to public accommodations and services operated by *private* entities. Title III provides generally: "No individual shall be discriminated against on the

basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

At issue in this case is Plaintiffs' assertions that they were denied appropriate accommodations during state court proceedings. Title III of the ADA governs twelve specifically enumerated categories of "public accommodation," that include, *inter alia*, restaurants, bars, movie theaters, auditoriums, laundromats, zoos, daycare centers, and gymnasiums. 42 U.S.C. § 12181(7). None of the defined categories of "public accommodation" include courthouses or the state court system, more generally. These are instead "public entities" that fall under the ambit of Title II of the ADA. *See* 42 U.S.C. § 12131 (The term "public entity" means . . . any department, agency, special purpose district, or other instrumentality of a State or States or local government"); *see also Galloway v. Superior Ct. of D.C.*, 816 F. Supp. 12, 19 (D.D.C. 1993) ("The Superior Court and the District of Columbia are public entities within the meaning of the [ADA]."); *accord Stone v. New Jersey Admin. Off. of the Cts.*, 557 F. App'x 151, 153 (3d Cir. 2014). Indeed, the language of § 12181(6) excludes "public entit[ies]" from the definition of "private entities" considered "public accommodations." State courthouses and the state court system, more generally, are, by definition, excluded as places of "public accommodations" under Title III. Plaintiffs' Title III ADA claim is accordingly dismissed with prejudice, as against all Defendants. *See Snider v. Pennsylvania DOC*, 505 F. Supp. 3d 360, 398 (M.D. Pa. 2020).

> ii.  *Plaintiffs' Title II ADA and RA Claims Are Dismissed*

Title II of the ADA provides, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42

U.S.C. § 12132.  To state a claim under the ADA, a plaintiff must demonstrate: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in, or denied the benefits of, a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability.  *Calloway v. Boro of Glassboro Dep't of Pol.*, 89 F.Supp.2d 543, 551 (D.N.J. 2000).

The regulation implementing Title II states that a public entity shall "[a]fford a qualified individual with a disability an opportunity to participate in or benefit from . . . [a] service that is equal to that afforded others."  28 C.F.R. § 35.130(b)(ii).  To that end, "[a] public entity shall furnish appropriate auxiliary aids and services where necessary to afford qualified individuals with disabilities, including applicants [and] participants . . . an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." 28 C.F.R. § 35.160(b)(1).[5] In making the determination of what auxiliary aids and services to provide, public entities are required to consider various factors, such as context, complexity, and the communication methods of the individual. 28 C.F.R. § 35.160(b)(l)-(2). Although public entities are required to "give primary consideration to the requests of individuals with disabilities" when "determining what types of auxiliary aids and services are necessary," 28 C.F.R. § 35.160(b)(2), public entities are not required to take any action that would result in a fundamental alteration or an undue burden. 28 C.F.R. § 35.164.

Title II of the ADA was expressly modeled after Section 504 of the RA, which provides, "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to

---

[5] The term "auxiliary aids and services" under the regulation implementing Title II includes "real-time computer-aided transcription services" as well as "voice, text, and video-based telecommunications products and systems."  28 C.F.R. § 35.104.

discrimination under any program or activity receiving Federal financial assistance . . . ."  29 U.S.C.  § 794(a).  A plaintiff bringing suit pursuant to Section 504 "must show (1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance."  *Strathie v. Dep't of Transp.*, 716 F.2d 227, 230 (3d Cir. 1983).  Claims under Title II of the ADA and Section 504 of the RA are analyzed together.  *Yeskey v. Commonwealth of Pa. Dep't of Corrections*, 118 F.3d 168, 170 (3d Cir. 1997); *see also Doe v. County of Centre, Pa.*, 242 F.3d 437, 446 (3d Cir. 2001) (holding that "the protections found in the ADA and [RA] are interpreted similarly").

The Court will dismiss Plaintiffs' Title II ADA claim against Coutinho-Crane with prejudice "because defendants who are not public entities or who are not sued in their official capacities cannot be liable for Title II violations."  *Wilson v. New Jersey Division of Child Protection and Permanency*, No. 13-CV-3346, 2019 WL 13260178, at *20 (D.N.J. Aug. 23, 2019).  As Plaintiffs' allegations make clear, Coutinho-Crane is not a public entity and is not being sued in any official capacity.  She is the stepmother of Gretchen and Daniel Crane, and is named in this lawsuit solely based on her role as an adverse litigant in proceedings before the New Jersey Superior Court involving Wolf and/or her children.  Count I of Plaintiffs' amended complaint is accordingly dismissed with prejudice as against Coutinho-Crane.

Plaintiffs' amended complaint similarly fails to state a cognizable claim under the RA or Title II of the ADA against any of the remaining Defendants.  In order for either of these claims to survive Rule 12(b)(6) dismissal, Plaintiffs must plead sufficient facts showing that: (1) they are qualified individuals with a disability; (2) they were either excluded from participation in, or denied the benefits of, a public entity's services, programs, or activities, or were otherwise

14

discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of that disability.

Here, Plaintiffs allege that Wolf suffers from the "disabilities" of PTSD and chronic asthma and that Gretchen suffers from PTSD and scoliosis.  There is nothing, however, in Plaintiffs' amended complaint which plausibly suggests that either Gretchen or Wolf were the subject of any form of discrimination during state court proceedings that is actionable under the RA or Title II of the ADA, much less that said "discrimination" was by reason of that disability.  Again, Plaintiffs root these claims in the purported denials of Wolf's requests to various court personnel to change venue, for copies of otherwise unspecified transcripts and audio recordings, and for other "disability accommodations and modifications."  Nothing about these vaguely worded incidents suggests that Plaintiffs were excluded from participation in, or denied the benefits of, court services and hearings in a manner which is actionable under the RA or Title II of the ADA.  *See Bakshi v. Bergen Cnty. Superior Ct.*, No. CV153560JLLJAD, 2016 WL 2653909, at *10 (D.N.J. May 10, 2016) (The "[ADA] does not permit a disabled plaintiff to unilaterally dictate the course of litigation, and, indeed, requires only in these circumstances that the public entity provide a disabled plaintiff an 'opportunity' to litigate his case equal to that of other litigants."), *aff'd*, 687 F. App'x 215 (3d Cir. 2017); *Stone v. New Jersey Admin. Off. of the Cts.*, No. CIV.A. 11-3229, 2012 WL 3863958, at *4 (D.N.J. Sept. 5, 2012) (Plaintiff's allegations that trial judges denied or ignored "his requested remedies of a [GAL] and counsel to assist him with 'access' to the court due to his mental disabilities" failed to support an actionable claim under the RA or the ADA), *aff'd*, 557 F. App'x 151 (3d Cir. 2014).

Furthermore, Plaintiffs' amended complaint fails to plausibly assert that Wolf and Gretchen's purported disabilities, *i.e.*, PTSD, asthma, and scoliosis, were the reason that the state

court denied Plaintiffs' requests for "accommodations and modifications."  *See Stone v. New Jersey Admin. Off. of the Cts.*, 557 F. App'x 151, 154 (3d Cir. 2014) ("[Plaintiff's] complaint does not state a claim under either the ADA or the RA because it does not sufficiently allege that he was excluded from or denied the benefit of the courts based on his disabilities.  He argues that the cumulative effect of several purported acts of misconduct by the state courts amounted to a denial of access to the courts on an equal basis with a person without a disability.  Taken together, his scattered factual allegations do not 'raise a right to relief above the speculative level.'") (quoting *Twombly*, 550 U.S. at 555).

For the foregoing reasons, Plaintiffs' ADA and RA claims (Counts One and Two, respectively) are dismissed in their entirety.  Count One, as pled, asserts that AOC, Grant, Melchionne, Tang, Simoldoni, Andreano, and Coutinho-Crane violated Titles II and III of the ADA; it seeks injunctive relief from all Defendants identified in Count One, and monetary damages from AOC as remedies for those purported violations.  That portion of Count One which seeks relief under Title III of the ADA is dismissed with prejudice as against all Defendants.  Count One is dismissed in its entirety, with prejudice, against Coutinho-Crane.  Those portions of Count One which seek injunctive relief against AOC, Grant, Melchionne, Tang, Simoldoni, and Andreano and monetary relief against AOC for their purported violations of Title II of the ADA are dismissed without prejudice.  Count Two, which asserts that AOC violated Section 504 of the RA, is also dismissed without prejudice.

Because Plaintiffs have failed to assert a cognizable RA or ADA claim against any Defendant, Count Three of their amended complaint, which seeks declaratory relief under 28 U.S.C. § 2201 that is limited to "construing and determining the rights of Plaintiffs under the

[ADA] and Section 504 of the [RA]" is also dismissed.  *Id.* ¶ 427.  Dismissal of this claim is without prejudice.

### C.  Plaintiffs' Malicious Abuse of Process Claim

In Count Four, Plaintiffs assert a claim for malicious abuse of process against Coutinho-Crane.  D.E. 32 ¶¶ 428-430.  Plaintiffs baldly assert that Coutinho-Crane "acted improperly in family court proceedings in an attempt to deprive the Plaintiffs of their rights of due process, through fabrication of evidence, false allegations, and motions practice without a basis in law, and in a manner not contemplated by law."  *Id.* ¶ 430.

"A successful malicious abuse of process claim requires a [p]laintiff to demonstrate '(1) that defendants made an improper, illegal, and perverted use of the process, *i.e.*, a use neither warranted nor authorized by the process; and (2) that in use of such a process there existed an ulterior motive.'"  *Cluver v. Borough of Sayreville*, No. 10-3173, 2013 WL 394030, at *8 (D.N.J. Jan. 30, 2013), *aff'd*, 557 F. App'x 180 (3d Cir. 2014) (quoting *Ash v. Cohn*, 194 A. 174, 176 (N.J. 1937)).  Such a claim focuses on the acts which a defendant engaged in after commencement of a lawsuit.  *Cluver*, 2013 WL 394030, at *8; *see also Hoffman v. Asseenontv.Com, Inc.*, 404 N.J. Super. 415, 431-32 (App. Div. 2009) (noting that a court's "focus must not be on what prompted the suit but what action [the alleged wrongdoer] engaged in after commencement of the action").

Here, the factual allegations against Coutinho-Crane fail to support a viable abuse of process claim.  Again, Coutinho-Crane appears to have been named as a Defendant in this action based solely on the fact that she was a party who took positions adverse to Wolf in family-related state court proceedings.  There is nothing, however, in Wolf's amended complaint which plausibly suggests that Coutinho-Crane, during the course of those proceedings, acted in a manner that was not authorized by the judicial process.  Plaintiffs' malicious abuse of process claim is accordingly

dismissed.  *See Morisseau v. Borough of N. Arlington*, No. 16-837, 2018 WL 1522731, at *17 (D.N.J. Mar. 28, 2018) (dismissing malicious prosecution claim because plaintiff's only allegations of wrongdoing after the issuance of process constituted legitimate efforts to enforce a legal eviction); *Pierre v. Treasury Dep't*, No. 18-3443, 2018 WL 5801549, at *9 (D.N.J. Nov. 5, 2018) (dismissing abuse of process claim because the plaintiff did "not set forth any facts showing that the . . . [d]efendants intentionally withheld information or elicited evidence that they knew to be false").  Dismissal of Count Four is without prejudice.

### D.  Plaintiffs' § 1983 and NJCRA Claims

In Count Six Plaintiffs assert a claim against Melchionne, Solimano, and other already-dismissed Defendants under 42 U.S.C. § 1983.  In Count Seven, they assert a claim against Melchionne, Solimano, Coutinho-Crane, and other already-dismissed Defendants claims under Section 1983's State counterpart, the New Jersey Civil Rights Act, N.J.S.A. § 10-6:2.  Plaintiffs request monetary damages – and that form of relief only – in both counts.  These claims will be dismissed in their entirety.

Section 1983 permits claims for violations of certain constitutional rights:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.

To state a claim for relief under § 1983, a plaintiff must allege: (1) the violation of a right secured by the Constitution or laws of the United States; and (2) that the alleged deprivation was committed or caused by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48

(1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).   NJCRA claims are analogous to their § 1983 federal counterparts, and are therefore analyzed using the legal framework applicable to the analogous § 1983 claim absent clear state law indicating otherwise.   *See, e.g., Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443-44 (D.N.J. 2011).

Plaintiffs' NJCRA claim is dismissed with prejudice against Coutinho-Crane because she is not a state actor; she is named in this suit in her role as a private litigant adverse to Wolf.   This is not a basis upon which NJCRA (or § 1983) liability can attach.   *Ramziddin v. Onfri*, No. CV1917578ZNQDEA, 2022 WL 4354837, at *6 (D.N.J. Sept. 20, 2022) (dismissing NJCRA claim against private actor because actions brought under NJCRA require a state actor); *Mikhail v. Kahn*, 991 F. Supp. 2d 596, 612 (E.D. Pa. 2014) (dismissing plaintiff's § 1983 claims against his ex-wife, all of which were based on her role as adverse litigant in contentious divorce and custody proceedings, in light of her "non-state actor status under § 1983").

Plaintiffs' § 1983 and NJCRA claims will also be dismissed with prejudice against Melchionne and Solimano.   First, there is nothing in Plaintiffs' pleading which plausibly suggest that either of these Defendants – or any Defendant for that matter – violated any of Plaintiffs' "right[s] secured by the Constitution or law of the United States."   42 U.S.C. § 1983.   Again, Plaintiffs plausibly allege only that Wolf was embroiled in several contentious state court cases, and that she remains dissatisfied with the intermediate rulings and ultimate outcomes of those proceedings.   Wolf's dissatisfaction, however, is not a legally cognizable harm or injury.   *See Reeves v. Hemsley*, No. CV 18-14061 (JMV/MF), 2019 WL 2560133, at *2 (D.N.J. June 21, 2019) ("The reality of the judicial process is that at least one party in nearly every case walks away from the courthouse dissatisfied with a judge's legal rulings).   Second, for the reasons discussed above,

both Melchionne and Solimano are immune from Plaintiffs' claims for money damages, which is the only form of relief sought by Plaintiffs in Counts Six and Seven.

For the foregoing reasons, Counts Six and Seven are dismissed in their entirety, with prejudice.

### E.  Plaintiffs' Civil Conspiracy Claim

In Count Five, Plaintiffs allege that Melchionne, Solimano, Coutinho-Crane, and a slew of other, already-dismissed Defendants "entered into an express or implied agreement to use improper and unlawful means to abuse process of law and deny litigants their fundamental [constitutional rights] . . . and to injure person appearing before the courts of the State of New Jersey."  D.E. ¶ 432.  Plaintiffs request injunctive relief as the sole remedy for these purported violations.  Plaintiffs' civil conspiracy claim will be dismissed, in its entirety, for failure to state a claim.

Under New Jersey law, civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage."  *Morgan v. Union County Bd. Of Chosen Freeholders*, 268 N.J. Super. 337, 364 (App. Div. 1993); *see also Banco Popular N.A. v. Gandi*, 184 N.J. 161, 177 (2005).  In stating a conspiracy claim, a plaintiff must allege facts regarding defendants' joint action rather than making conclusory allegations of concerted action.  *See Abbott v. Latshaw*, 164 F.3d 141, 148 (3d Cir. 1998).  Furthermore, a civil conspiracy claim must allege "at least some facts which could, if proven, permit a reasonable inference of a conspiracy to be drawn."  *Durham v. City and County of Erie*, 171 F. App'x 412, 415 (3d Cir. 2006).  Plaintiffs can meet this requirement when their complaint "sets forth a valid legal theory and it adequately states

20

the conduct, time, place, and persons responsible." *Lynn v. Christner*, 184 F. App'x 180, 185 (3d Cir. 2006).

Here, Plaintiffs' civil conspiracy claim is deficient for a number of reasons.  First, the facts alleged in Plaintiffs' amended complaint fail to credibly suggest that any Defendants committed any act by unlawful means.  Again, Plaintiffs plausibly allege only that Defendants are various actors involved in state court judicial proceedings, and that Wolf remains dissatisfied with the results of those proceedings.  These allegations therefore similarly fail to support a legally cognizable harm or injury. *See Dennis v. Sparks*, 449 U.S. 24, 28 (1980) ("[M]erely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge.").  Furthermore, Wolf's conspiracy claim is supported only "by conclusory allegations of concerted action" which cannot sustain this claim.  For these reasons, Wolf's civil conspiracy claim is accordingly dismissed in its entirety.  Dismissal of Count Five is without prejudice.

### F.  Summary of the Court's Rulings

In summary, Counts One through Seven of Plaintiffs' amended complaint all fail to adequately state a claim for relief against any Defendant that survives dismissal under Rule 12(b)(6).  In addition, all claims for monetary relief against Melchionne, Grant, Tang, Simoldoni, Andreano, and Solimano are dismissed with prejudice based on judicial/quasi-judicial immunity.  That portion of Count One which seeks relief under Title III of the ADA is dismissed with prejudice as against all Defendants.  Count One is dismissed in its entirety, with prejudice, as against Coutinho-Crane.  Those portions of Count One which seek injunctive relief against AOC, Grant, Melchionne, Tang, Simoldoni, and Andreano and monetary relief against AOC for their purported violations of Title II of the ADA are dismissed without prejudice.  Counts Two, Three,

Four, and Five are dismissed without prejudice.  Counts Six and Seven are dismissed with prejudice.

### G.  Leave to Amend

The Court is hard-pressed to believe that Plaintiffs will be able to maintain a legally viable cause of action against any Defendant under any of the legal theories set forth in their current, now-dismissed pleading.  That said, leave to amend a pleading "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).  The Court finds that it is consistent with principles of fairness and justice to afford Plaintiffs one last opportunity to cure the pleading deficiencies identified herein.  Plaintiffs shall have 30 days to file an amended complaint.  Any such pleading will appropriately account for all prior rulings, decisions, and dismissal orders of this Court.  If Plaintiffs do not submit an amended complaint curing the deficiencies identified herein within 30 days, the non-prejudicial dismissal of all claims that have not already been prejudicially dismissed will then be with prejudice.

## IV.   CONCLUSION

For the reasons above, Defendants' motions are **GRANTED**.  Plaintiffs' amended complaint is **DISMISSED** in its entirety.

Dated: March 6, 2023

_____
Evelyn Padin, U.S.D.J.